UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM H. SCHATZMAN, *et al.*, | : | Case No. 1:15-cv-302 |
| Plaintiffs, | : | Judge Timothy S. Black |
| vs. | : | |
| PARTNERS FOR PAYMENT RELIEF, LLC, | : | |
| Defendant. | : | |

### ORDER DENYING DEFENDANT'S MOTION
### FOR JUDGMENT ON THE PLEADINGS (Doc. 9)

This civil action is before the Court on the motion for judgment on the pleadings (Doc. 9) of Defendant Partners for Payment Relief, LLC ("PPR") and Plaintiffs' memorandum in opposition (Doc. 10).

Plaintiffs' Complaint is largely based on Defendant's alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, and its provisions relating to "Qualified Written Requests" ("QWRs"). In essence, Plaintiffs allege that Defendant violated RESPA by not responding substantively to Plaintiffs' March 9, 2015 inquiry, which Plaintiffs allege was a "Qualified Written Request" triggering responsive duties on behalf of PPR. Plaintiffs allege that Defendant failed to provide such a response, resulting in actual damages to Plaintiffs. In response, Defendant argues that it is entitled to judgment in its favor because the pleadings show that Plaintiffs' March 9, 2015 inquiry was not a QWR and did not trigger RESPA obligations on Defendant's part. Further, and in the alternative, Defendant argues that it is entitled to

judgment on the pleadings because even if the March 9, 2015 inquiry were deemed to be a QWR, the Complaint and exhibits show that Defendant complied with its obligations under RESPA, which, in turn, vitiates Plaintiffs' claims under RESPA and the Fair Debt Collection Practices Act ("FDCPA").

## I. FACTS AS ALLEGED

On April 29, 2005, Plaintiffs, the Schatzmans, financed the purchase of real property commonly known as 377 Laurel Green Drive, Springboro, Ohio 45066 with a note secured by a mortgage. (Doc. 1 at ¶ 23; Docs. 1-1, 1-2).

On October 13, 2013, Defendant Partners for Payment Relief, LLC ("PPR") filed a foreclosure action against the Schatzmans in the Common Pleas Court of Warren County, Ohio, Case Number 13-CV-84886. (Doc. 1 at ¶ 24). Daniel Barham and Joshua Farthsworth, of Barham Legal, LLC, were PPR's attorneys of record.

The Schatzmans disputed the amounts alleged as owing on the mortgage loan and disputed PPR's standing and legal right to maintain the foreclosure action. (Doc. 1 at ¶ 26). Specifically, the foreclosure Complaint attached as an exhibit an unendorsed promissory note with no allonges or assignments.

During the pendency of the foreclosure proceedings, Schatzmans' prior counsel, John Ruffolo, sent a Qualified Written Request ("QWR") to PPR, c/o Barham Legal, LLC, on May 2, 2014. (Doc. 1-7). PPR admits that it accepted and responded to this QWR which had been sent to the designated address of Barham Legal, LLC. (Doc. 9 at 10; *see also* Doc. 1-8).

2

Ultimately, on February 6, 2015, PPR dismissed the foreclosure action. (Doc. 1 at ¶ 25). After PPR dismissed the foreclosure action, the Schatzmans desired for PPR to investigate specific fees charged to the mortgage loan account and to provide documentation in response to their request for information. (Doc. 1 at ¶ 26).

On March 2, 2015, PPR mailed a letter to the Schatzmans stating that the servicing of their mortgage loan would be transferred from PPR to FCI Lender Services, Inc. ("FCI"). The transfer of servicing was to be effective as of March 17, 2015. (Doc. 1 at ¶ 27; Doc. 1-3). The address designated in the March 2, 2015 notice of transfer letter for service of QWRs was the address of FCI, the new servicer <u>as of March 17, 2015</u>. (*See* Doc. 1-3).

On March 9, 2015, before the transfer of service to FCI was effective, the Schatzmans' attorney contacted Barham Legal, LLC to inquire whether it still represented PPR with regard to receiving a QWR. (Doc. 1 at ¶ 28; Doc. 1-4). The Schatzmans' attorney inquired:

> Please immediately advise the undersigned on whether you still represent PPR on the matter regarding William and Pamela Schatzman.
>
> Please advise whether a Qualified Written Request should be mailed to your attention or PPR directly.
>
> Please provide the RESPA address for the QWR letter.

(Doc. 1-4).

On March 9, 2015, PPR attorney Joshua Farnsworth of Barham Legal, LLC replied: "Please send to our office." (Doc. 1 at ¶ 29; Doc. 1-4).

3

On March 9, 2015, the Schatzmans, through counsel, sent a letter to Barham Legal, LLC, requesting that PPR correct errors, credit the mortgage loan account, answer their questions, and provide documentation regarding the chain of title of the promissory note and mortgage. (Doc. 1 at ¶¶ 26, 30). The letter stated that it was a Qualified Written Request pursuant to law. (*See* Doc. 1-5). The QWR contained the Schatzmans' names, property address, and account number. (Doc. 1 at ¶ 31; Doc. 1-5). The QWR contained a notice of errors and a request for information. (Doc. 1 at ¶¶ 30, 32, 33). The March 9, 2015 letter stated the following:

**QUALIFIED WRITTEN REQUEST** . . . .

Pursuant to your e-mail dated March 9, 2015, I am writing to the address for counsel because I am aware that Partners for Payment Relief, LLC is represented by counsel and I have an ethical obligation to communicate directly with its counsel. If counsel would like me to send this letter directly to Partners for Payment Relief, LLC, please let me know *immediately*. I will otherwise assume counsel is an authorized agent to accept receipt of this Qualified Written Request ("QWR") letter. . . .

This letter is a **qualified written request ("QWR") and notice of error**, pursuant to the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. 2605(e). *See also* 12 C.F.R. 1024.35; 12 C.F.R. 1024.36.

(Doc. 1-5) (emphasis in original).

The QWR specifically requested the "preferred address for receiving QWRs and notices of error, if it differs from the address this QWR was sent to." (Doc. 1 at ¶ 33; Doc. 1-5).

Barham Legal, LLC received the QWR for PPR on March 13, 2015, four days before the effective transfer of servicing date. (Doc. 1 at ¶ 34; Doc. 1-6).[1] Tracy Greene, an employee of Barham Legal, LLC, signed the certified mail receipt. (Doc. 1-6).

On March 18, 2015, Daniel Barham, the authorized agent for PPR, stated that he had "reviewed our file and discovered that your client has previously sent a 'QWR' to which we responded. My review and understanding of the relevant regulations indicate that PPR is only required to respond to one such request." (Doc. 1 at ¶ 38; Doc. 1-4). Daniel Barham was referring to the QWR sent to Barham Legal, LLC by Plaintiffs' attorney, John Ruffolo, on May 2, 2014.

PPR refused to respond substantively to the Schatzmans' March 9, 2015 QWR. (Doc. 1 at ¶ 1). Instead, PPR merely sent a copy of the same response it had sent to attorney John Ruffolo in 2014. (*Id.* at ¶39, Docs. 1-7, 1-8).

The Schatzmans' March 9, 2015 QWR requested new information not included in attorney John Ruffolo's May 2, 2014 QWR. (*See* Doc. 1 at ¶ 40).[2] PPR refused to respond substantively to the Schatzmans' QWR, failed to make any corrections to the account, failed to reply to the "notice of errors," failed to explain why it thought the account was correct, failed to investigate the notice of errors, and failed to provide the requested information. (*Id.* at ¶¶ 41–48).

---

[1] "A servicer shall retain records that document actions taken with respect to a borrower's mortgage loan account <u>until one year after the date</u> a mortgage loan is discharged or <u>servicing of a mortgage loan is transferred by the servicer to a transferee servicer</u>." 12 C.F.R. § 1024.38 (emphasis added).

[2] Whether the second QWR was "duplicative" of the first QWR is, at the least, a disputed issue of material fact.

The Schatzmans allege that they incurred actual damages for improper fees, charges, and interest remaining on the account, photocopying, postage, and substantial attorney fees. (Doc. 1 at ¶¶ 50, 52–53). The Schatzmans also allege that they have suffered non-economic actual damages of emotional distress, in the form of anxiety, fear, distress, and mental anguish. (*Id.* at ¶ 51).

The Schatzmans further allege that PPR's March 2, 2015 servicing transfer letter constituted a debt collection communication under the Fair Debt Collection Practices Act ("FDCPA"), and that the letter contained numerous false, deceptive, and misleading statements of fact and law in violation of the FDCPA. (Doc. 1 at ¶¶ 70–80).

Plaintiffs pray that PPR be held liable for actual damages, statutory damages,[3] costs, and attorney fees for multiple violations of RESPA and the FDCPA. (Doc. 1 at 15).

## II. STANDARD OF REVIEW

The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (citing *JPMorgan Chase Bank v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). That is, a court should grant a motion for judgment on the pleadings under Rule 12(c) only if "no material issue of fact

---

[3] To be liable for statutory damages, a lender must have demonstrated a "pattern or practice" of non-compliance with RESPA. 12 U.S.C. § 2605(f). Plaintiffs aver such by alleging that PPR's response that 'we only respond to one QWR' reflects a pattern or practice of conduct unlawful under RESPA. *See* Doc. 1 at ¶38; Ex. D).

6

exists and the party making the motion is entitled to judgment as a matter of law." *Winget*, 510 F.3d at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

To show grounds for relief, Rule 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The Rule "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id*.

Accordingly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id*.

7

### III.    ANALYSIS

**A.  RESPA**

The Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.,* ("RESPA"), is a remedial consumer protection statute encompassing loan servicing. *Marais v. Chase Home Finance, LLC*, 736 F.3d 711, 719 (6th Cir. 2013) (citation omitted). Remedial statutes should be construed broadly to extend their coverage, and their exclusions or exceptions should be construed narrowly. *In re Carter*, 553 F.3d 979, 986 (6th Cir. 2009) (citing *Cobb v. Contract Transport Inc.*, 452 F.3d 543, 559 (6th Cir. 2006)).

Upon the receipt of a QWR, RESPA requires a lender to investigate and answer inquiries by borrowers in order to provide borrowers greater access to information about their mortgage loans. *See* 12 U.S.C. § 2605(e)(2).

RESPA defines QWRs to be any written correspondence which identifies the borrower(s) and their account number and either notifies the servicer of an error or requests other information. 12 U.S.C. § 2605(e)(1)(B)(i)-(ii).

For notices of error, a borrower must supply "a statement of the reasons for the belief of the borrower, to the extent applicable that the account is in error." 12 U.S.C. § 2605(e)(1)(B)(ii). For requests for information, a borrower must supply "sufficient detail to the servicer." *Id.*

A loan servicer can validly respond to a QWR letter in three ways. First, a servicer can make corrections to the account, per 12 U.S.C. § 2605(e)(2)(A). Second, a servicer, following an investigation, can explain or clarify why the account is already correct, per 12 U.S.C. § 2605(e)(2)(B). Third, a servicer can, after an investigation,

provide the borrower with a written explanation or clarification that includes information requested and explains why information not provided cannot be obtained or provided by the servicer, per12 U.S.C. § 2605(e)(2)(C).

### B. THE SCHATZMANS ALLEGE THE FACTUAL ELEMENTS OF A "QUALIFIED WRITTEN REQUEST" IN THE MARCH 9, 2015 LETTER

The Schatzmans' March 9, 2015 letter clearly states that it is a "**QUALIFIED WRITTEN REQUEST**" and that "[t]his letter is a qualified written request ("QWR") and notice of error, pursuant to the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. 2605(e).  *See also* 12 C.F.R. 1024.35; 12 C.F.R. 1024.36."  (Doc. 1-5) (emphasis in original).  The March 9, 2015 letter contained the Schatzmans' names, property address, and account number.  (Doc. 1 at ¶ 31; Doc. 1-5).  The March 9, 2015 letter contained a notice of errors regarding the Schatzmans' PPR account.  (Doc. 1 at ¶ 32).  The March 9, 2015 letter contained a request for information from PPR regarding the account.  (*Id.* at ¶ 33).  Accordingly, the letter is amenable to a finding that it constitutes a qualified written request ("QWR") within the meaning of RESPA at 12 U.S.C. § 2605(e)(1)(B), 12 C.F.R. 1024.35(a), and 12 C.F.R. 1024.36(a).

### C. THE SCHATZMANS ALLEGE FACTS SHOWING RECEIPT BY PPR OF THE MARCH 9, 2015 QWR

PPR instructed the Schatzmans' counsel that Barham Legal, LLC was the designated address for the receipt of the Schatzmans' QWR.  Barham Legal, LLC's associate attorney, Joshua Farnsworth, specifically designated the QWR address to be Barham Legal, LLC.  (Doc. 1 at ¶ 39; Doc. 1-4).

The Schatzmans knew PPR was represented by counsel. The Rules of Professional Conduct required the Schatzmans to mail a copy of the QWR to counsel. Ohio Prof. Cond. R. 4.2.

Previously, without complaint from PPR, the Schatzmans' prior counsel, John Ruffolo, had sent a QWR to PPR care of its attorneys, Barham Legal, LLC on May 2, 2014. (Doc. 1-7). Barham Legal, LLC never contested that the letter was not a QWR, nor did PPR ever contest that the QWR was sent to the wrong address. Thus, PPR had already accepted and responded to a QWR sent to the designated address of Barham Legal, LLC, when the Schatzmans sent the March 9 QWR to PPR's attorneys.

Moreover, as to the second QWR, the Schatzmans allege facts that PPR specifically identified Barham Legal, LLC as its designated address for QWRs.

### D. RECIEPT OF THE QWR TRIGGERS THE DUTY TO RESPOND UNDER RESPA

The "receipt" of a QWR, not the address to which it is mailed, triggers the statutory requirements under RESPA. *Hittle v. Residential Funding Corp.*, No. 2:13-cv-353, 2014 WL 3845802, at *6, (S.D. Ohio Aug. 5, 2014). That is, "the statutory language indicates that receipt triggers the servicer's duty to respond under RESPA." *McMillen v. Resurgent Capital Servs., L.P.*, No. 2:13-CV-00738, 2015 WL 5308236, at *6 (S.D. Ohio Sept. 11, 2015); *see also Allen v. Bank of America, N.A.*, 933 F. Supp. 2d 716, 733 (D. Md. March 19, 2013) ("12 U.S.C. § 2605(e)(1) is triggered if the servicer "receives" the request, regardless of whether it was first directed to the servicer.").

Stated simply:

[N]either the plain language of 12 U.S.C. § 2605(e) nor 24 C.F.R. § 3500.21(e)(1) require a borrower to send his request to a loan servicer's designated address. Section 3500.21 simply allows a loan servicer to establish such a place. What the statute does require, however, is that the loan servicer receive the borrower's request for information. The plain language of § 2605(e)(2) makes clear that a defendant's RESPA obligations are triggered by "the receipt from any borrower" of a QWR.

*McMillen*, 2015 WL 5308236, at *7.

Here, Barham Legal, LLC received the March 9, 2015 QWR. (Doc. 1 at ¶ 37; Doc. 1-6). Tracy Greene, an employee of Barham Legal, LLC, signed the certified mail receipt. (Doc. 1-6). The address of Barham Legal, LLC, PPR's attorneys, was the designated address for the receipt of the QWR. (Doc. 1-4).

There is no doubt that PPR received the QWR, (c/o Barham Legal, LLC), because PPR's attorneys responded to the QWR by mailing stale, year-old information previously sent to Schatzmans' prior counsel; and declining to respond further. (Doc. 1 at ¶¶ 37–39).

PPR's receipt of the QWR triggered PPR's duty to respond pursuant to RESPA. And Plaintiffs allege facts reflecting that PPR did not fully reply to Plaintiffs' proper inquiries.

### IV. CONCLUSION

When facing a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

11

alleged." *Id*. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

Moreover, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Fritz*, 592 F.3d at 722 (citation omitted). That is, a court should grant a motion for judgment on the pleadings under Rule 12(c) only if "no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Winget*, 510 F.3d at 582 (citation omitted).

Here, as discussed *supra* at pp. 7–11, there is no doubt that Plaintiffs, based on factual allegations accepted as true, have pled a plausible claim for recovery under RESPA and FDCPA.

At this stage of the litigation, movant PRR is not "clearly entitled to judgment."

Accordingly, for these reasons, Defendant's motion for judgment on the pleadings (Doc. 9) is **DENIED**

**IT IS SO ORDERED**.

Date:  1/5/16                                                                 *s/ Timothy S. Black*
                                                                              Timothy S. Black
                                                                              United States District Judge